UNITED STATES of America,
Appellee,

v.

Michael Peter EVANCHIK, Howard John Critzman, Carl Pugliese, and Thomas Sobeck, Appellants.

Nos. 500–503, Dockets 32841–32844.

United States Court of Appeals
Second Circuit.

Argued May 20, 1969.

Decided July 16, 1969.

James F. Bingham, Stamford, Conn., for appellant Pugliese.

Ira B. Grudberg, New Haven, Conn., for appellants Evanchik, Critzman and Sobeck.

J. Daniel Sagarin, Asst. U. S. Atty. (Jon O. Newman, U. S. Atty. for the District of Connecticut, on the brief), for appellee.

Before LUMBARD, Chief Judge, HAYS and FEINBERG, Circuit Judges.

HAYS, Circuit Judge:

Appellants Evanchik, Critzman and Pugliese were convicted on two counts, and appellant Sobeck on one count, upon a trial by jury, of knowingly transporting stolen goods in interstate commerce in violation of 18 U.S.C. § 2314 (1964), as amended (Supp. IV 1965–1968). We have considered the many assignments of error that have been advanced by appellants and have found no ground for reversal. The judgments of conviction are affirmed.

The relevant counts of the indictment [1] charge that appellants and several code-fendants knowingly transported goods of a value in excess of $5,000 stolen from the plant of Clairol, Inc. in Stamford, Connecticut to Jamaica, New York and Miami, Florida. The government's case was based on the testimony of three co-defendants who pleaded guilty, an un-indicted co-conspirator, and several other witnesses, and was corroborated by exhibits.

The evidence established that stolen Clairol products were removed from the plant in Stamford, together with legitimately shipped goods, in trucks of the Adley Express Company. They were taken to the Adley terminal in Stamford where they were segregated from the legitimate goods and reloaded onto other trucks, rented for the purpose, and were then transported to out-of-state destinations.[2] Critzman was responsible for loading the stolen products onto the Adley

---

1. The convictions were on counts two and three of a seven-count indictment. The first four counts charged substantive violations of 18 U.S.C. § 2314 (1964), as amended (Supp. IV 1965–68); the last three charged conspiracies under 18 U.S.C. § 371 (1964) to violate 18 U.S.C. §§ 2314 and 2315 (1964), as amended (Supp. IV 1965–68). Count five was dismissed before trial; counts four and seven were severed. At the close of the government's case count one was dismissed as being outside of the period of the statute of limitations. At the same time the court granted appellant Sobeck's motion for acquittal on count two.

Trial continued on counts two, three and six. The jury returned verdicts of guilty against appellants Evanchik, Critzman and Pugliese on counts two and three and against Sobeck on count three alone. The jury disagreed on count six and a mistrial was declared.

2. The initial thefts were effected by transferring the stolen goods directly from the Adley truck to the rented truck, rather than by first unloading them at the Adley terminal.

truck at the plant, Evanchik was the driver of the Adley truck, and Pugliese was in charge of unloading the stolen goods at the Adley terminal and reloading them onto the rented vehicles. Sobeck was one of the recipients of the stolen goods.

### 1. Sufficiency of the evidence

■ Since appellants Pugliese and Critzman contend that as to them there was insufficient evidence to support the jury's verdicts of guilty, we append a short résumé of the case against them.

*Critzman:* It is clear from the method of execution of the thefts from the Clairol plant that an inside man was participating. Nuro, one of the codefendants, who pleaded guilty to a charge of conspiracy, testified that some men from Clairol were involved. There was evidence that stolen goods were removed from the Clairol plant in the evening, that Critzman was in charge of the loading platform after 4:30 p. m., and that during the relevant period there were occasions when the only persons at the Clairol loading platform were Critzman and Evanchik. The evidence thus establishes that Critzman had the opportunity to steal the Clairol products and that it is unlikely that anybody else at Clairol could have stolen them without Critzman's participation. In addition, Morris, an unindicted co-conspirator, convincingly identified Critzman at trial as the man he saw standing with Evanchik at Clairol on the occasion that he picked up stolen goods at the Clairol plant. Finally, the government introduced evidence that Critzman deposited over $40,000, partly in cash, in bank and brokerage accounts in a period of a little more than two years at a time when his annual salary was between $7,-000 and $9,000, and that the deposits were made at or shortly after the times when the stolen goods were sold in New York and Florida.

*Pugliese:* Pugliese was the night dispatcher at the Adley terminal; every-thing that left Adley at night was under his control. Morris and Nuro both testified that they picked up the stolen goods at Adley at night. Morris testified that Evanchik told him that when he got to Adley, he should see "the night dispatcher by the name of Carl." At the trial he identified Carl as Pugliese. Morris further testified that Pugliese gave him a bill of lading to sign for each shipment, which he signed with various fictitious names, including Tom Mix. Nuro similarly testified that Evanchik had told him to "go down to Adley Terminal and a Carl would load me," and also identified Carl as Pugliese. He further testified that he had seen or heard Carl at the terminal on numerous occasions when he made pickups of stolen goods. Carl once told him to remain in his truck while it was being loaded, though there was evidence that it was not the normal practice to require drivers to remain inside their trucks during loading. Finally, Maleski, an employee at the Adley terminal, testified that it had been pursuant to Pugliese's instructions that he had loaded Nuro's truck with stolen Clairol products.

We find that the evidence was ample to support the verdicts.

### 2. Motion for inspection

At the close of the government's case the appellants filed motions to produce and inspect. The court initially ordered the government to furnish appellants' counsel with "the names of any witnesses or copies of any documents in [the] Government's possession * * * which would have exculpatory information with respect to any of the defendants or which would be useful in their defense." Upon objection and upon the government's assertion that none of the requested information was exculpatory the court agreed that such an order would be too broad and instructed defendants to suggest to the government any information in which they were particularly interested. A motion to produce the entire investigating file of the F.B.I. was there-

upon made and denied as "much too broad." That motion was renewed the next day, and motions were made to produce and inspect "investigative information concerning Thomas Geonetti [an unindicted alleged co-conspirator]," "all written communication between the New York-Miami-Stamford-New Haven offices of the FBI and Joseph Luca, staff counsel for Bristol-Myers [Clairol's parent company], concerning defendants and unindicted coconspirators," "statements and investigative reports pertaining to Irving Murray Rosen and TDL Sales Corporation, the buying corporation for Mineola Beauty Supply and Barber Supply, Inc. [to whom Stuart, a confessed co-conspirator, testified to having sold Clairol products]," and "the names of witnesses that [the government] interviewed while Mr. Pugliese was on duty * * *." Defendants were unable to indicate how the requested information might possibly prove to be helpful; the motions were accordingly denied.

The court's denial of the motions for inspection was proper. Neither Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), nor any other case requires the government to afford a criminal defendant a general right of discovery. Within the limits prescribed by Dennis v. United States, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed. 2d 973 (1966), holding that the government must provide defendants with the grand jury minutes of a witness who testifies at trial on the subjects about which he testified while he is still available from cross-examination, and United States v. Youngblood, 379 F.2d 365 (2d Cir. 1967), providing for inspection *in camera* in certain circumstances, the assurance by the government that it has in its possession no undisclosed evidence that would tend to exculpate defendant justifies the denial of a motion for inspection that does not make some particularized showing of materiality and usefulness. Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969), does not suggest a contrary result. That case deals only with the tran-scripts of *illegally* overheard conversations; as the Court observed, "when an illegal search has come to light, [the government] has the ultimate burden of persuasion to show that its evidence is untainted." Id. at 183, 89 S.Ct. at 972.

### 3. *Advisory ruling on cross-examination*

Appellants contend that the court erred in refusing to make an advisory ruling on the scope of permissible cross-examination of appellants' proposed character witnesses. The court stated that it could not determine the proper scope of cross-examination until after the direct examination had been completed, but agreed to discuss at the close of the direct examination what might be asked on cross.

Whether or not an advisory ruling will be given is a matter within the discretion of the trial court. See United States v. Hart, 407 F.2d 1087 (2d Cir., cert. denied 395 U.S. 916, 89 S.Ct. 1766, 23 L.Ed.2d 231 (1969)). The scope of cross-examination is itself a matter properly left to the sound discretion of the trial court; whether the cross-examination about which the appellants were inquiring would have been proper could not have been determined until after the character witnesses testified. The court quite clearly did not abuse its discretion in its proposal as to the procedure to be followed.

### 4. *Charge to the jury*

*Failure to call witnesses:* The court instructed the jury that if a "potential witness could have been called by the government or by the defendants and neither side called the witness, then you may infer that the testimony of the absent witness might have been unfavorable either to the government or to the defendants or to both of them. But on the other hand, it's equally within your province to draw no inferences at all from the failure of either side to call a witness." That instruction is entirely consistent with the rule in this circuit. See United States v. Dibrizzi, 393 F.2d 642,

**954**

646 (2d Cir. 1968): "As to whether it is permissible to draw any inference at all from a party's failure to call a certain witness when that witness is equally available to both parties there is indeed a split of authority. * * * However, the better rule * * * is the rule in this circuit * * *, namely, that the failure to produce such a witness is open to an inference against either party."

 *Credibility of perjurers:* Much of the testimony at the trial was given by Morris and Nuro. Morris, though unindicted, admitted to participating in the thefts. Nuro pleaded guilty to conspiracy. Both admitted on the stand that they had perjured themselves before the grand jury. The court charged that the testimony of co-conspirators should be subjected to close and careful scrutiny. It also charged that a witness may be impeached by inconsistent statements. Under such circumstances it was not error to refuse to charge that the testimony of an admitted perjurer "should be considered with caution and weighed with great care."

■ *Possession of recently stolen property*: Appellant Pugliese complains of the court's failure to charge that "if any possession the accused may have of recently stolen property is consistent with innocence, the Jury should acquit the accused." Where, as here, however, there is independent direct or circumstantial evidence bearing on appellant's knowledge that the goods were stolen, such a charge is not warranted. See United States v. Messina, 388 F.2d 393, 394 (2d Cir.), cert. denied, 390 U.S. 1026, 88 S.Ct. 1413, 20 L.Ed.2d 283 (1968); United States v. De Sisto, 329 F.2d 929, 935 (2d Cir.), cert. denied, 377 U.S. 979, 84 S.Ct. 1885, 12 L.Ed.2d 747 (1964).

### 5. *Other claims*

The other claims raised by appellants are without merit and require no discussion.

Affirmed.