UNITED STATES of America

v.

Theodore J. ISAACS et al.

No. 71 CR. 1086.

United States District Court,
N. D. Illinois, E. D.

May 30, 1972.

See also D.C., 347 F.Supp. 763.

James R. Thompson, U. S. Atty., Chicago, Ill., Samuel K. Skinner, First Asst. U. S. Atty., Chicago, Ill., Darrell McGowen, Dept. of Justice, Washington, D. C., Steven Kadison, Gary L. Starkman, Steven H. Mora, Asst. U. S. Attys., Chicago, Ill., for government.

Albert E. Jenner, Jr., Thomas P. Sullivan, Jenner & Block, Chicago, Ill., for defendant Isaacs.

William A. Barnett, Chicago, Ill., for defendant Miller.

Edward Bennett Williams, Williams, Connolly & Califano, Washington, D. C., for defendant Kerner.

George F. Callaghan, Chicago, Ill., for defendant Knight.

F. Lee Bailey, Bailey, Alch & Gillis, Boston, Mass., for defendant McInturf.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

Defendants have filed a combined total of forty-three motions (exclusive of alternative motions and motions filed after the deadline agreed to by counsel in January), supported by the same number of briefs. The Government has responded and defendants have filed rebuttal briefs. The reading of the motions and briefs alone involved considerable time and effort. Some of the motions raise difficult questions about which the courts have expressed divergent views.

### Motions of Judge Kerner

Motions filed by Otto Kerner, Jr. will be considered in numerical order first, as they were the first to be filed. There are thirteen in number.

### Unauthorized Persons in Grand Jury Room

 The first is a motion to dismiss the indictment because of the presence of unauthorized persons in the grand jury room during its sessions. This motion is supported by affidavit and is based on an alleged violation of Rule 6(d), F.R.Cr.P., which provides:

"Attorneys for the government, the witness under examination, interpreters when needed and, for the purpose of taking the evidence, a stenographer or operator of a recording device may be present while the grand jury is in

session, but no person other than the jurors may be present while the grand jury is deliberating or voting."

The attached affidavit of Kerner states, in substance, that he testified on August 6, 1971 before the May, 1971 grand jury which returned the indictment; that during his testimony on that day he saw in the grand jury room the grand jurors, the reporter, the Government lawyers and three other men not shown by the transcript to have been present; that he recognized one of the three men as Internal Revenue Agent T. R. Johnson, with whom he had spent several days in June, 1965, in the course of an audit of certain of his income tax returns; and, that he did not know the identity of the other two men.

An old case dealing with the subject is United States v. Edgerton, 80 F. 374 (D.C.Mont., 1897). In that case, an expert witness was not only permitted to remain after he had testified before the grand jury, but was also permitted to propound questions to subsequent witnesses. The Government argued that the defendant was not prejudiced by these actions. The Court rejected this contention and stated that the common law rule excluding all but the witness and the United States Attorney from the grand jury sessions admitted no exceptions.[1] Potentials for prejudice were listed that could occur by the presence of an expert witness. The Court concluded that if the presence of an unauthorized person is excused, it will be impossible to set the bounds to prevent abuse. This statement comes as close as possible to a *per se* rule requiring dismissal.

Latham v. United States, 226 F. 420 (C.A.5, 1915) is another case often cited in support of a *per se* rule regarding dismissal because of the presence of an unauthorized person in the grand jury room while the grand jury is deliberating. In that case, a stenographer, who was also a clerk for the United States

---

1. The Court ignored a statute in force that required the defendant to show prejudice under certain circumstances. R.S. 1025 (1872).

Attorney's Office, was allowed to be present and to record testimony. The stenographer had taken an oath to keep secret the grand jury proceedings. The Court, nevertheless, dismissed the indictment. Addressing itself to the question of whether the defendant was reqired to show prejudice, the Court stated that the unauthorized presence was a matter of substance[2] and the presence if unauthorized was illegal.[3]

The foregoing cases were largely conclusory in their reasoning. United States v. Carper, 116 F.Supp. 817 (D.C. D.C., 1953), is better reasoned and supports a *per se* rule. There three deputy marshals were permitted to remain in the room while the prisoners they were guarding testified. The Government argued that the deputies' presence was both necessary for protection and in no way prejudiced the defendant. The Court said that at most the defendant need only show "probable prejudice" by the deputies' presence. This prejudice was supplied by a finding that the capacity of the deputies as the witnesses' keepers could well have influenced their testimony. It was pointed out that Rule 6(e) could possibly allow the deputies to divulge what they had heard since that section stated secrecy could not be imposed on anyone other than those listed. Finally, the Court noted the virtual impossibility of an accused ever showing prejudice. This statement severely limited the remarks about showing "probable prejudice." Probable prejudice in this case was supplied and the case was dismissed.

█ Certain law review articles have suggested that the purpose of the rule is to maintain secrecy.[4] *Wigmore* argues that the rule is not for the accused but

for society, witnesses and jurors. Wigmore on Evidence, Vol. VIII, §§ 2360–63, pp. 728–41 (1961). Secrecy is undoubtedly a purpose behind the rule but the rule is based on a broader ground and that is the possibility of undue influence. In *Latham*, supra, the stenographer had taken an oath of secrecy and there was no allegation that it had been broken. Nevertheless, the Court dismissed the indictment. In *Carper*, supra, the Court pointed out that the prejudice would be the coercive atmosphere generated by the deputies' presence.

Two recent cases reinforce the undue influence factor as the basis for the rule. The first is that of United States v. Borys, 169 F.Supp. 366 (D.C.Alaska, 1959). In that case, the mother was permitted to remain in the grand jury room while her seven-year-old child was testifying. The Court held that this invalidated the indictment. The other case is that of United States v. Bowdach, 324 F.Supp. 123 (S.D.Fla., 1971), in which an FBI agent was in the grand jury room to operate a machine playing tapes for the purpose of refreshing a witness' recollection. In that case, the Court said:

> "Rule 6(d) and the cases construing it lay down a hard and fast rule which allows for no exceptions."

p. 124

We conclude that an evidentiary hearing is necessary to determine if unauthorized persons were in the grand jury room during its sessions. United States v. Brumfield, 85 F.Supp. 696, 706 (W. D.La.1949).

## Mail Cover

Judge Kerner also moves pursuant to Rule 12(b), F.R.Cr.P., for an order dismissing the indictment upon the ground

---

2. See R.S. 1025 (1913). This statute was basically the same as the one disregarded by the *Edgerton* court. This court distinguished it by stating it was concerned with procedural irregularities but that an unauthorized presence was substantive.

3. Cases disagreeing with this case do so as to presence of a stenographer and do

not argue against the basic holding. See Wilson v. United States, 229 F. 344 (C.A. 2, 1916); United States v. Rockefeller, 221 F. 462 (S.D.N.Y., 1914); Wilkes v. United States, 291 F. 988 (C.A. 6, 1923).

4. 24 Temple L.Q. 342 (1951); 16 Ford L. Rev. 131 (1947).

that the Government unconstitutionally subjected him to a mail cover in violation of Article III of and the First and Fourth Amendments to the United States Constitution, or in the alternative for an order requiring the Government fully to disclose all the facts and circumstances surrounding the aforesaid mail cover and any other mail cover imposed on the defendant and any direct or indirect use made of the fruits thereof, and for an evidentiary hearing thereon for the suppression of all of said fruits. The motion is supported by affidavit of Charles Rhyne, a mail carrier, who stated in substance that sometime about the middle of January, 1971, he received a telephone call from his supervisor, Mr. Erwood, that he would be receiving Form 2007 and that he should list on this form all mail received in Judge Kerner's chambers, including the name, address, city and state of the senders; that sometime previous to January, 1971, the date he did not recall, he was ordered to fill out the same forms on mail received by Judge Kerner's Chambers in the Dirksen Building.

■ Defendant's alternative motion for an order requiring the Government to disclose all facts surrounding the mail cover and any other mail cover imposed on the defendant, and any direct or indirect use thereof, is sustained.

The Government is directed to state for the use of the defendant the following: (1) the full extent and duration of the mail covers; (2) the circumstances under which it was instituted, including the names and positions of all persons who authorized it; (3) the procedure by which it was instituted, including the names and positions of all persons involved therein; (4) the purported justification for its institution; (5) the information it produced; (6) the names and positions of all persons to whom such information was transmitted and the date of such transmission; (7) the use made of such information.

■■ Many of the courts that have dealt with the mail cover question have held that the Fourth Amendment does not prevent postal inspectors from copying information contained on the outside of sealed envelopes in the mail where no substantial delay in delivery is involved. Lustiger v. United States, 386 F.2d 132, 139 (C.A.9, 1967); United States v. Costello, 255 F.2d 876, 881 (C.A.2, 1958); United States v. Schwartz, 283 F.2d 107 (C.A.3, 1960); Canaday v. United States, 354 F.2d 849 (C.A.8, 1966); Cohen v. United States, 378 F.2d 751, 760 (C.A.9, 1967). We have examined the case of Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) relied upon by the defendant and do not find anything in that decision which holds mail cover operations are unconstitutional. See Hoffa v. United States, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966).

■ We are not impressed with the Government's position that Judge Kerner is not in a position to question the mail cover operations on constitutional grounds until he received the mail from the sender. See Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).

■ Although this Court neither approves nor condones the mail cover of Judge Kerner's chambers as a federal appellate judge, this will not justify the extreme action of dismissing the indictment for alleged violation of his rights under Article III and the First and Fourth Amendments to the Constitution, as argued by his attorneys.

*Destruction of Essential Evidence*

Defendant Kerner moves to dismiss Count XV on the ground that the Government destroyed essential evidence. The Government in reply states that on July 15, 1970, Special Agents Stufflebeam and Campbell interviewed the defendant. During the interview, both of them took notes for the purpose of later incorporating them into a memorandum of interview. Later on the same date, the agents dictated their rough notes and their recollection of what defendant Ker-

ner told them to the IRS secretary. Based upon the agents' dictation, the secretary typed a memorandum of interview. On the evening of July 15, 1970, the agents compared their notes with the formal memorandum of interview and determined that the formal memorandum accurately and fully reflected their rough notes. On, or shortly after July 15, in accordance with the established practice, the rough interview notes were destroyed. See affidavits of Stufflebeam and Campbell, Exhibits A and B to the Government's response.

The case of Killian v. United States, 368 U.S. 231, 82 S.Ct. 302, 7 L.Ed.2d 256 (1961), also is cited on the question of whether the notes were destroyed due to ordinary or gross negligence or for the purpose of preventing them from being used as evidence. The Court observed that if the notes of Ondrejka of expenses were made only for the purpose of transferring the data thereon to the receipts to be signed by Ondrejka and if after having served that purpose they were destroyed by the agents in good faith and in accordance with their normal practice, it will be clear that their destruction did not constitute an impermissible destruction of evidence nor deprive defendant of any right. On the other hand, if they were destroyed for the purpose of depriving the accused of evidence, or in bad faith, such would constitute impermissible destruction.

Defendant relies upon United States v. Bryant, 142 U.S.App.D.C. 132, 439 F. 2d 642 (1971), to support his motion to dismiss the income tax count of the indictment because of the destruction of the agents' notes. In that case, the Court held that where Government agents made a tape recording of motel room conversations between defendant and an undercover agent concerning sale of narcotics, and the Government claimed it lost the recording, the case should be remanded to determine the degree of negligence or bad faith involved on part of the Government and the importance of the evidence lost.

Another case is that of United States v. Heath, 147 F.Supp. 877 (D.C.Hawaii 1957), appeal dismissed 260 F.2d 623 (C.A.9, 1958). In that case, defendant was charged with evading his income taxes for the years 1949 and 1950 in violation of 26 U.S.C. § 145(b). His books and records were turned over to the agents of the Government in 1952. The trial court found that the records of the defendant turned over to the Government for at least a part of the period covered by the indictment were corrected by defendant in his handwriting and initialed and that those records were in existence prior to the time the Government agents received certain records from the accused and that those records were in the hands of the Internal Revenue agent during the period they were investigating the civil and criminal tax liability of the accused for the period 1949 and 1950. The Court held that it would be a denial of a constitutional trial to compel the defendant to go to trial in the absence of the records.

■ In the instant case, the notes were made for the purpose of preparing a formal memorandum. The memorandum has been furnished to the defendant. It is not uncommon for Government agents to destroy their rough notes. See *Killian*, supra; United States v. Hoffa, 349 F.2d 20 (C.A. 6, 1965), aff'd 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966).

Accordingly, the Court must hear proof before a final ruling can be made on this question.

*Statement of Offense under Travel Act*

Motion is made to dismiss Counts I through V for failure to charge an offense against the United States under Title 18 U.S.C. § 1952, or in the alternative to dismiss Counts II through V for duplicity.

In considering the motion to dismiss for failure to state an offense, it is appropriate to recall the language of the United States Supreme Court in Hagner

v. United States, 285 U.S. 427, 431, 52 S.Ct. 417, 419, 76 L.Ed. 861 (1932):

"The rigor of old common-law rules of criminal pleading has yielded, in modern practice, to the general principle that formal defects, not prejudicial, will be disregarded. The true test of the sufficiency of an indictment is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, 'and sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offence, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.' Cochran and Sayre v. United States, 157 U.S. 286, 290, 15 S.Ct. 628, 630, 39 L.Ed. 704; Rosen v. United States, 161 U.S. 29, 34, 16 S.Ct. 434, 480, 40 L.Ed. 606."

■ Attacking these counts, defendant Kerner first claims that the indictment fails to charge that the proceeds of the unlawful activity were distributed after the use of the interstate facility or travel in interstate commerce. The indictment in this case identifies the offense the defendants allegedly conspired to commit and apprises them of what they must be prepared to meet and is sufficiently accurate to prevent a future prosecution. See United States v. Kahn, 381 F.2d 824, 829 (C.A. 7, 1967); United States v. Airdo, 380 F.2d 103, 104 (C.A. 7, 1967).

He next claims that Counts II–V should be dismissed because the alleged connection between the illegal conduct charged and the alleged use of interstate commerce is purely incidental to the illegal conduct charged. He contends that this is an insufficient use of interstate commerce to bring the charged illegal conduct within the purview of 18 U.S.C. § 1952.

The defendant relies strongly on the case of United States v. Altobella, 442 F.2d 310 (C.A.7, 1971), which held that the mailing of a check [drawn on a Philadelphia bank] and deposited by a third party endorser in a Chicago bank was an insufficient interstate act to come within the Congressional intent behind 18 U.S.C. § 1952 because the use of the interstate facility was incidental to the extortion scheme and because the mailing was done by the bank.

He also relies on Rewis v. United States, 401 U.S. 808, 91 S.Ct. 1056, 28 L.Ed.2d 493 (1971), which held that § 1952 was not intended to reach criminal activity solely because it was patronized by out-of-state customers but was aimed primarily at organized crime of persons residing in one state while operating illegal activities in other states through interstate facilities. The Court in *Rewis* indicated an unwillingness to construe federal legislation so as to alter a sensitive state-federal balance, absent a clear Congressional mandate.

He likewise relies on United States v. Bass, 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971). *Bass* construes 18 U.S.C.App. § 1202(a), which is ambiguous, as to whether proof that a firearm traveled in or affected interstate commerce was an essential element of the offense. The Court held that it was, because an ambiguity in a penal statute is resolved in favor of lenity. It was particularly concerned that a broad construction would permit a novel intrusion into traditionally state criminal jurisdiction and upset the delicate federal-state balance. The Court concluded that absent a clear statement of Congressional intent to alter this balance, none would be imputed. The relevance of *Bass* to the instant case is based on the above policy, that is, under the *Bass* philosophy of federal-state relations defendant contends 18 U.S.C. § 1952 should not be construed to reach an essentially intrastate crime.

The Government contends that the conduct charged in the indictment violates 18 U.S.C. § 1952 in that the checks mentioned in the indictment were an integral part of the bribery scheme. It relies on United States v. Lee, 448 F.2d

604 (C.A. 7, 1971), which observed that neither *Rewis* nor *Altobella* affected the validity of the convictions there on appeal. In *Lee* employees of an illegal activity in one state resided in another state from which they commuted. The jury was permitted to impute knowledge of this interstate travel to the proprietors' of the business. *Rewis* was distinguished on the basis of a distinction between interstate travel by customers and interstate travel by employees of the illegal business. *Altobella* was distinguished on the fact that there the isolated use of an interstate facility resulted from the act of the victim and not a participant in the unlawful enterprise.

In light of *Lee* the indictment appears to charge an offense under § 1952. The acts charged are alleged to have been instigated by participants in the bribery scheme set forth in the indictment.

Defendant argues that Congress enacted § 1952 with a specific intent of controlling organized crime in interstate commerce. He, therefore, contends that the deposit of checks for collection as charged in Counts II–IV, by itself, does not charge a violation of § 1952 but amounts to a meddling in state matters by the federal government. The Government answers that § 1952 was intended to deny the use of interstate facilities to those who corrupt public officials and that a deposit of a check for collection is such a use of an interstate facility. See United States v. Wechsler, 392 F.2d 344, 347, n. 3 (C.A. 4, 1968), cert. den. 392 U.S. 932, 88 S.Ct. 2283, 20 L.Ed.2d 1389.

The Ninth Circuit in United States v. Roselli, 432 F.2d 879 (C.A. 9, 1970) discussed the scope and legislative intent behind 18 U.S.C. § 1952. The Court pointed out that while Congress intended to strike at those illicit activities that provide organized crime with its profits it did not limit the prohibitions of § 1952 to:

> " . . . only those persons who could be shown to be members of an organized criminal group . . .

nor against only those kinds of gambling, liquor, narcotics, and prostitution offenses that racketeers were engaged in at the time Congress acted. The words of section 1952 are general; they contain no restriction to particular persons or to particular kinds of gambling, liquor, narcotics, and prostitution offenses."

p. 885

■ The reasons for not restricting the class of persons covered by § 1952 is self-evident. It would be difficult, if not impossible, to prove a particular defendant's association with or control by a clandestine criminal organization. On the contrary, Congress intended to make § 1952 generally applicable to anyone engaged in an "unlawful activity" as defined in that statute. Bribery in violation of the laws of the state is clearly such an unlawful activity. There is nothing to suggest that Congress intended to restrict the statute to racketeers. The essence of the crime is the fraudulent scheme. The interstate communication merely provides a constitutional basis for the exercise of federal power. Therefore, knowing interstate travel or knowing use of an interstate facility is not an essential element of a violation of § 1952. United States v. Roselli, supra, 432 F.2d at 884–886, 890–891. Although the point raised by defendant is debatable, in the opinion of the Court the *Roselli* rationale is a more reasonable interpretation of Congressional intent.

*Duplicity in Indictment under Travel Act*

■ The duplicity charged in Counts II–V is based on the failure of the indictment to specify which subsections of the Illinois bribery statute are alleged to have been violated. Such a multiple reference cannot be duplicitous. Duplicity is the charging of more than one offense in a single count. Counts II–V charge only a violation of § 1952. The reference to several state statutes does not increase the number of federal violations charged in each count. The

754

uncertainty in this matter has been resolved by a request for particulars.

*Statement of Offense under Mail Fraud Statute*

██ In his motion to dismiss Counts I and VI–XIII for failure to charge a violation of 18 U.S.C. § 1341, defendant Kerner contends that the conduct alleged is outside the purview of the statute. We disagree. There are numerous reported cases where state officials have been successfully prosecuted for corruption under this statute. United States v. Faser, 303 F.Supp. 380 (E.D.La., 1969), is in point. There elected and appointed state officials accepted bribes for arranging to have idle state funds deposited in the banks of the bribers. The defendants violated Louisiana law but federal jurisdiction was acquired by their use of the mails in furtherance of the scheme.

Shushan v. United States, 117 F.2d 110 (C.A. 5, 1941), involved a charge against state officials, including members of the Levee Board of Louisiana for using the mails in a scheme to defraud the State of Louisiana. In that case, the Court stated that depriving the State of fair judgment of its officers through corruption comes within the purview of the statute making it an offense to use the mails in effecting a scheme to defraud.

Another case relied upon by the Government is Bradford v. United States, 129 F.2d 274 (C.A. 5, 1942). That case involved a fraud in which a city official and his brother participated. The fraud related to the sale of buses in which an exorbitant profit was made by the seller at the expense of the City. The Bradford brothers who had political influence were bribed to put the deal over. In affirming the jury verdict of guilty, the Court quoted from the Judge Sibley opinion in *Shushan,* supra, as follows:

 " 'A scheme to get a public contract on more favorable terms than would likely be got otherwise by bribing a public official would not only be a plan to commit the crime of bribery, but would also be a scheme to defraud the public. The fact that the official who is bribed is only one of several and could not award the contract by himself does not change the character of the scheme where he is expected to have influence enough to secure the end in view. No trustee has more sacred duties than a public official and any scheme to obtain an advantage by corrupting such a one must in the federal law be considered a scheme to defraud. The essential immorality of an arrangement of that sort, or even the use of undue personal influence, is illustrated in [citing cases]. We agree with appellants that the constructive frauds which equity in civil cases sometimes sets up to do justice will not suffice under this criminal statute; and that there must be a purpose to do wrong which is inconsistent with moral uprightness. So conceding, we think a scheme to defraud by corrupting an official and also by misrepresentation of results achieved is alleged.' "

129 F.2d p. 276.

*Duplicity in Indictment under Mail Fraud Statute*

It is further contended in this motion that the charges in Counts VI, VII, IX and XIII are duplicitous. These counts charge the delivery of certain letters in the Northern District of Illinois *and* the placing of these letters in the mails.

██ Both the placing of any matter, or thing, in the mails and causing it to be delivered are offenses within the meaning of § 1341, but they were merely alternative means, set out in the disjunctive, by which the mails may be used in violation of the statute. In the instant case, both alternative means were mentioned in each count, but the alternative means mentioned are based on the doing of only one act. Such a count is not duplicitous. United States v. Amick, 439 F.2d 351, 359 (C.A. 7, 1971); Fields v. United States, 408 F.2d 885 (C.A. 5, 1965); United States v. Zolli, 51 F.R.D.

522, 527 (E.D.N.Y., 1970). The only crime charged in these counts is that the defendants devised a scheme to defraud and used the mails to effectuate that scheme. These are the essential elements of the offense. See United States v. White, 355 F.2d 909 (C.A. 7, 1966); United States v. Johnson, 298 F.Supp. 58 (N.D.Ill., 1969).

For the reasons discussed, the various motions to dismiss various Counts I–XIII for failure to charge an offense against the United States or for duplicity are denied.

*Duplicity in Perjury and False Statement Charges*

Motion is made pursuant to Rule 12(b), F.R.Cr.P., for dismissal of Counts XIV and XV on the ground that they charge multiple offenses.

■ The law forbids the charging of more than one offense in one count of an indictment for two reasons. First, the accused is denied the clear concurrence of all the jurors as to each offense charged as the basis of a conviction. Second, it is impossible for the jury to find him guilty of some offenses charged in the duplicitous count and not guilty as to others. United States v. Warner, 428 F.2d 730, 735 (C.A. 8, 1970). On this basis, defendant asserts that it is not possible to determine whether the majority of the grand jury found the defendant probably guilty as to each or any one of the offenses charged in a duplicitous count. Gaither v. United States, 134 U.S.App.D.C. 154, 413 F.2d 1061 (1969); Ex parte Bain, 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887).

■ Count XIV charges perjury before the grand jury. 18 U.S.C. § 1623. Defendant asserts that § 1623 proscribes "any false material declaration" in the singular whereas Count XIV charges him with having made "false material declarations" in the plural. He submits that he was examined on three separate and distinct topics concerning which he allegedly gave false answers. As a con-

sequence, he contends Count XIV charges three separate offenses. In the opinion of the Court the three separate topics are subsidiary to a more basic single question, to-wit, whether defendant Kerner had ever attempted to influence racing dates. Accordingly, only a single perjury offense is charged.

■ Similarly Count XV charges a knowing and deliberate misrepresentation in a matter within the jurisdiction of an agency of the United States, namely, the Internal Revenue Service. The basis of the motion as to Count XV is the fact that it alleges six separate false statements. The Government contends that each of these statements was related to a single question, that is, the identity of the "Chicago Co." We agree.

■ An indictment will not be held bad on the ground of duplicity if words employed present to the common understanding a single charge. Millard v. United States, 148 F.2d 154 (C.A. 5, 1945). Only one charge is stated in each of these counts of the indictment. The motion must be denied. Arena v. United States, 226 F.2d 227, 236 (C.A. 9, 1955), cert. den. 350 U.S. 954, 76 S. Ct. 342, 100 L.Ed. 830 (1956).

*Statement of Offense under 18 U.S.C. § 1001*

■ Defendant Kerner has moved to dismiss Count XV for failure to state an offense. The main issue raised by the parties in this motion is whether the statements allegedly made by Kerner to Internal Revenue Special Agents should be classified as affirmative statements that come within the purview of § 1001, as the Government contends, or as exculpatory oral denials, as Kerner contends, and therefore beyond the purview of § 1001.

The defendant relies upon Paternostro v. United States, 311 F.2d 298 (C.A.5, 1962) in support of this motion. In that case, the answers made by the accused were simple denials that were later determined to be false. The sole question was whether mere negative an-

swers to certain questions propounded by federal agents constitute statements within the meaning of that word as it appears in § 1001. The purpose of the statute as viewed by the *Paternostro* Court was to protect the Government from being victimized by positive statements which tend to prevent and affect normal government activities and functions. It cited with approval United States v. Levin, 133 F.Supp. 88 (D.C. Col.1953).

In *Levin*, the defendant was charged with stating to an FBI agent that he had never told anyone that he had information as to the identity of a ladies dinner ring, when in fact had he been told of such information. It was held that the answer was not a statement within the meaning of § 1001. The Court observed that an inquiry into cases of a minor nature, even civil, involving a willful false statement would constitute a violation and incur a potential penalty of up to five years imprisonment and/or a fine of $10,000.00, while the violation of the perjury statute only calls for a penalty of up to two years.

A case relied upon by the Government to sustain Count XV is Knowles v. United States, 224 F.2d 168 (C.A.10, 1955). In that case, the accused contended that § 1001 does not reach oral and voluntary statements made to investigating officers which are not required by law, rule or regulation to be given to an agency or department of the Government. The Court held that the statement to an Internal Revenue Agent in the course of an authorized inquiry into correctness of taxpayer's returns is a statement made "within the jurisdiction of any department or agency of the United States." The materiality of the statement was a question but the Court held there was no doubt of materiality.

Concerning the materiality issue, *Paternostro* decided that the indictment before it contained the elements of the offense even though the specific allegation of materiality was lacking. The Court stated that an examination of the record

in the case convinced it that the defendant was fully apprised of the nature of the grand jury investigation and that the indictment was sufficient. This is true in our case.

The Government relies upon United States v. McCue, 301 F.2d 452 (C.A.2) cert. den. 370 U.S. 939, 82 S.Ct. 1586, 8 L.Ed.2d 808 (1962), which involved false statements made by the defendant relative to a drilling of wells on his property. Inquiry was made of him as to who negotiated for the drilling of wells on his place and he replied that he had no idea. He was asked who paid for the well drilling operation and he replied that he did not know. He falsely stated that he didn't pay for the expenses and did not authorize the payment and knew nothing about it. He also made false answers with respect to places that he visited on the dates shown on certain memos. The Court recognized that there was some division of opinion as to whether the citizen's reply to an agent with an "exculpatory no" is within the purview of the statute. The Court held, however, that the great weight of authority supported the applicability of the statute to the circumstances of that case. The only case cited supporting a contrary result was United States v. Philippe, 173 F.Supp. 582 (S.D.N.Y. 1959). The Court rejected its reasoning and its result.

In the opinion of the Court the statements allegedly made are within the purview of § 1001 and the motion is, therefore, denied.

*Motion for Government's Evidence*

The motion for an order requiring the Government to state whether it intends to offer in evidence at the trial any statements of any of the defendants other than statements of defendant Kerner, requiring production to the Court of said statements, and if any of the statements tend to be inculpatory to defendant Kerner as to any of the offenses alleged in the indictment, severance of defendant Kerner for separate trial from

the other defendant who made the statement in question is denied.

■ The Government is not required to turn over its evidence to the defendants in advance of the trial. See United States v. Conder, 423 F.2d 904 (C.A.6, 1970); Hemphill v. United States, 392 F.2d 45 (C.A.8, 1968); United States v. Evanchik, 413 F.2d 950 (C. A.2, 1969); United States v. Fioravanti, 412 F.2d 407 (C.A.3, 1969) cert. den. Panaccione v. United States, 396 U.S. 837, 90 S.Ct. 97, 24 L.Ed.2d 88. If it has any statement of defendant Kerner, it will produce said statement for inspection and copying by defendant Kerner.

## Motion for Inspection of Documents

Defendant Kerner has moved pursuant to Rule 16, F.R.Cr.P., and Rule 6, for an order directing the United States Attorney to permit the defendant to inspect and copy a number of items. The motion is granted as to paragraph 5 and denied as to paragraphs 2, 3, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19 and 20. The Government has supplied the information sought in paragraphs 1 and 4.

## Motions of Defendant Isaacs

## Motion for Election of Counts

■ Defendant Isaacs has moved for an order compelling an election between the conspiracy and the substantive counts of the indictment. The conspiracy is a separate and distinct crime from the substantive offenses, and the motion is denied. See Callanan v. United States, 364 U.S. 587, 593, 81 S.Ct. 321, 5 L.Ed.2d 312 (1961); Pereira v. United States, 347 U.S. 1, 11, 74 S.Ct. 358, 98 L.Ed. 435 (1954); Pinkerton v. United States, 328 U.S. 640, 644, 66 S. Ct. 1180, 90 L.Ed. 1489 (1946).

■ He has moved for an order compelling an election between the eight counts charging substantive violations of the mail fraud statute on the ground that the separate mailings were merely incidental to a single fraudulent scheme and, therefore, constitutes a multiplication of offenses. We do not agree. The motion is denied. See Badders v. United States, 240 U.S. 391, 393–394, 36 S.Ct. 367, 60 L.Ed. 706 (1916); United States v. Hopkins, 357 F.2d 14 (C.A.6, 1966), cert. den. 385 U.S. 858, 87 S.Ct. 107, 17 L.Ed.2d 84; United States v. Browne, 225 F.2d 751, 755–756 (C.A.7, 1955).

■ He also has moved for an order to compel an election between the four counts alleging substantive violations of the Travel Act on the ground that the illegal scheme rather than an entrance into interstate commerce constitutes the proscribed conduct. We disagree. See United States v. Teemer, 214 F.Supp. 952, 958 (N.D.W.Va.1963); United States v. Zirpolo, 288 F.Supp. 993, 1022–1023 (D.N.J.1968), reversed on other grounds 450 F.2d 424 (C.A.3, 1971).

■ In any event the Government should not be compelled to elect counts until its proof has been presented. United States v. Universal C. I. T. Credit Corp., 344 U.S. 218, 225, 73 S.Ct. 227, 97 L.Ed. 260 (1952).

## Motion to Suppress Evidence

Defendant Isaacs has moved to dismiss the indictment or alternatively, to suppress evidence on the ground that Special Agents of the Intelligence Division, Internal Revenue Service, interviewed him, and his accountant, while he was the subject of a criminal investigation and (1) failed to give him his Miranda warning and (2) misrepresented that he was not the subject of a criminal investigation.

■ When illegally obtained evidence is discovered, the proper remedy is suppression of it and its fruits. Dismissal of the indictment is inappropriate unless the Government concedes that its only evidence is tainted. United States v. Blue, 384 U.S. 251, 255 n. 3, 86 S.Ct. 1416, 16 L.Ed.2d 510 (1965); United States v. Tane, 329 F.2d 848, 853–854 (C.A.2, 1964). See also, Costello v.

United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956). Accordingly, the motion to dismiss is denied.

Affidavits have been submitted both in support of and in opposition to this motion. From these, the following facts appear not to be in dispute: The interviews in question took place on July 15, 1970, December 3, 1970, December 4, 1970 and January 13, 1971. On January 5, 1971, he had a telephone conversation with a special agent. He was advised at the July 15, 1970, and again at the December 3, 1970, interviews that he was not the subject of a criminal investigation; that the investigation involved Judge Kerner and Mr. Miller; and, that he did not have to talk to the agents if he chose not to do so. On January 13, 1971, he was advised for the first time that he was the subject of a criminal investigation. Isaacs is an attorney with no experience in federal income tax prosecutions.

Isaacs states that on information and belief he was the subject of a criminal investigation prior to January 13, 1971, and further that he was never given the *Miranda* warning.

Government affidavits show that Isaacs first became the subject of a criminal investigation on January 5, 1971, and that he was so advised on the first personal contact subsequent thereto, to-wit, January 13, 1971. All prior contacts concerned his capacity as a potential witness in the Miller-Kerner investigation. He was given a full *Miranda* warning on July 15, 1970, December 3, 1970, and January 13, 1971. On both December 3, 1970 and January 13, 1971, he acknowledged understanding his Fifth Amendment rights.

▆▆▆▆ A taxpayer undergoing non-custodial interrogation is entitled to a full *Miranda* warning on the agents' first contact with him after the case has been transferred to the Intelligence Division. United States v. Dickerson, 413 F.2d 1111 (C.A.7, 1969). Even if the Government misrepresented the nature of their inquiry, evidence freely supplied by the accused is still admissible. Frazier v. Cupp, 394 U.S. 731, 739, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969).

The Government conceded that Isaacs may have believed in July, 1970 that he was the subject of a criminal investigation but submits that this belief cannot be imputed to the Government agents on the basis of that belief alone.

On this record, there is a question of fact, i.e., whether Isaacs was a de facto or official subject of a criminal investigation prior to January 15, 1971. If so, there is an additional question as to whether and when he was given the full *Miranda* warning. In the opinion of the Court even if the status of the investigation was misrepresented to Isaacs, if the full *Miranda* warning was given him there is no reason to suppress any evidence he subsequently supplied. Thus, a decision on this motion hinges on a question of fact, that is, whether Isaacs was given a full *Miranda* warning and, if so, when. An evidentiary hearing has been granted on this question.

*Prejudicial Delay*

▆▆▆▆ Defendant Isaacs has moved for dismissal of the indictment because of prejudicial delay in the commencement of prosecution. The prejudice asserted is: "(a) recollections of potential witnesses . . . have dimmed; (b) material evidence *may* have been misplaced or destroyed; (c) the investigation and discovery of matters related to the defense will be substantially impeded." These assertions are conclusory. The concept of delay as applied to this motion seems to rest on the fact that the indictment returned December 15, 1971, refers to events transpiring between 1960 and 1968. Isaacs appears to believe that the statute of limitations on a conspiracy charge should begin to run when the scheme is first conceived rather than with the last overt act alleged. Such a contention cannot be sustained. United States v. Marion, 404 U.S. 307, 320–322, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971).

*Motions of Defendant Miller*

*Motion for Inspection*

Motion of defendant Miller for inspection and copying is granted as to paragraphs 3 and 4 and denied as to paragraphs 5, 6, 7, 8, 9, 10, 11 and 12. The Government has supplied the information sought in paragraphs 1 and 2.

*Motion for Additional Discovery and Inspection*

Motion for additional discovery and inspection of documents is granted as to paragraph 8 and denied as to paragraphs 1, 2, 10, 33, 37 and 38. The Government has supplied the information sought in paragraphs 3, 4, 5, 6, 7, 9, 11, 12, 13 through 32, 34, 35 and 36.

*Motion for Disclosure*

■■■■ Defendant Miller has filed a motion for disclosure of exculpatory information as required by Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The Government has acknowledged its obligation to furnish all *Brady* material in its possession but states its belief that it possesses no such material. *Brady* does not afford a general right of discovery. United States v. Evanchik, supra, 413 F.2d at 953. Assurance by the Government that it does not possess undisclosed exculpatory evidence absent a particularized showing of its existence and materiality will support denial of a motion for inspection. United States v. Crisona, 416 F.2d 107, 116 (C.A. 2, 1969); United States v. Evanchik, supra. The motion must be denied.

*Motion to Dismiss Counts I through V*

Defendant Miller has filed a motion to dismiss Counts I through V for failure to state an offense against the United States, or Counts II through V for duplicity. This motion is identical to one filed by defendant Kerner. This motion is denied for the same reasons that the motion of defendant Kerner is denied.

*Motion to Dismiss Indictment*

The motion to dismiss the indictment because of the presence of unauthorized persons in the grand jury room has been discussed under Kerner's motions.

*Motion for Reassignment*

Defendant Miller has moved for reassignment of this case to another judge in accordance with the local rules of the United States District Court for the Northern District of Illinois. This issue has been previously decided by the Executive Committee of said Court and their action has been affirmed by the United States Court of Appeals for the Seventh Circuit. Accordingly, the motion must be denied.

*Motion to Dismiss for Alleged Bias of Grand Jury*

■■■■ Defendant Miller has moved for dismissal of the indictment on the ground of alleged bias of grand jury due to the facts that he twice appeared before it despite the fact that he was a prospective defendant and that there had been prejudicial news publicity concerning the grand jury investigation. A prospective defendant may be compelled to appear before the grand jury even though he indicates that he intends to rely on the Fifth Amendment. United States v. Addonizio, 313 F.Supp. 486 (D. C.N.J., 1970), aff'd 451 F.2d 49 (C.A. 3, 1971), cert. den. 405 U.S. 936, 92 S.Ct. 949, 30 L.Ed.2d 812 (1972). A reading of the transcript of Miller's testimony before the grand jury shows that he was treated fairly and provided every opportunity to consult with counsel. He did answer some questions and identify certain corporate records. More than a mere conjecture of bias from the presence of adverse publicity is necessary to warrant an evidentiary hearing or dismissal of an indictment. See Estes v. United States, 335 F.2d 609, 613 (C.A. 5, 1964), cert. den. 379 U.S. 964, 85 S. Ct. 656, 13 L.Ed.2d 559 (1965); Lawn v. United States, 355 U.S. 339, 78 S.Ct.

311, 2 L.Ed.2d 321 (1958). The motion must be denied.

### Motions of Defendant Knight

### Motion for Examination of Exculpatory Evidence

■ Defendant Knight has moved for an order permitting his examination of any exculpatory evidence in the possession of the Government, a list of documents concerning the case that will not be introduced into evidence, a list of persons known to the Government to have some knowledge of the case, and a list of statements of persons whom the Government will not call to testify. He submits that he is entitled to this information pursuant to Brady v. Maryland, supra. The order requested goes far beyond the scope of the *Brady* rule. Further, the Government acknowledges its responsibility under *Brady* to disclose any exculpatory evidence in its possession, but denies the existence of such evidence. The motion must, therefore, be denied.

### Motion to Dismiss Indictment for Artifice

■ Defendant Knight has moved to dismiss the indictment on the ground that it was obtained by trick and artifice, because he was compelled to testify before the grand jury and was misled to believe that he was not a putative defendant. The motion is denied. See United States v. Addonizio, supra.

### Motion to Dismiss for Uncertainty

Defendant Knight has moved to dismiss the indictment on the ground of uncertainty, failure to state an offense and indefiniteness. A careful reading of the indictment rebuts this claim. The motion is denied.

### Motions of Defendant McInturf

### Motion to Dismiss

■ Defendant McInturf has moved for dismissal of the indictment or, alternatively, for suppression of her grand jury testimony on the grounds that she was in the position of a defendant, did not have the assistance of counsel and was not advised of her constitutional rights at the time of her grand jury testimony. The Government has submitted an affidavit showing that Miss McInturf was not a potential defendant at that time. There is no opposing affidavit. The transcript of her grand jury testimony shows that she had been advised of her constitutional rights by her own counsel and that she had counsel in attendance and available for consultation at that time. It is apparent that her rights were not violated as she asserts. Accordingly, the motion must be denied.

### Motion for Discovery

On defendant McInturf's motion for discovery, paragraphs 1, 2, 3, 4, 5, 12, 17, 26, 27, 28, 30, 31, 32 and 36 are denied, and the motion as to paragraph 33 is sustained as to those who may have been in the grand jury room if any, but whose presence was not authorized by Rule 6(d), F.R.Cr.P. The Government has supplied the information sought in paragraphs 6–11, 13–16, 18–25, 29, 34 and 35.

### Motions of All Defendants

### Motions for Joinder and Severance

There are nine motions dealing with questions of joinder and severance based on a variety of arguments.

■ The general rule is that persons jointly indicted should be tried together, particularly where a conspiracy is charged and may be proved against all defendants by the same evidence; but, a joint trial may not be had at the expense of a defendant's right to a fair trial. Severance should be granted only when it appears that a joint trial will prejudice one or more of the defendants. The burden is on the defendant to show such prejudice as will compel a severance. United States v. Kahaner, 203 F.Supp. 78 (S.D.N.Y.1962); United States v. Kahn, 381 F.2d 824, 838–839 (C.A.7, 1967). Under the law of joinder satis-

faction of Rule 8(b) in multi-defendant cases precludes application of Rule 8(a) as to each single defendant. See Williams v. United States, 416 F.2d 1064, 1068 (C.A.8, 1969); United States v. Friedman, 445 F.2d 1076, 1082–1083 (C.A.9, 1971); Roselli v. United States, 432 F.2d 879, 898 (C.A.9, 1970), cert. den. 401 U.S. 924, 91 S.Ct. 883, 27 L. Ed.2d 828 (1971). Even dissimilar charges may be joined against multiple defendants if they arise out of the same series of transactions constituting an offense or offenses. *Friedman,* supra, 445 F.2d at 1082. Criminal violations of the federal income tax law may be properly joined with non-tax charges in an indictment if the tax charges arise out of and are factually related to the same scheme or series of transactions as all other counts in the indictment. *Roselli,* supra, 432 F.2d at 898. Where co-defendants are charged with a conspiracy and separate substantive offenses, and there is a connecting link between the conspiracy and the substantive offenses, the counts are not misjoined. United States v. Godel, 361 F.2d 21 (C.A.4, 1966).

Thus, the question is whether the conduct on which each count is based is a segment of a series of factually related transactions constituting, in essence, a common scheme in which all defendants, at some point, participated. United States v. Amick, 439 F.2d 351, 360 (C.A. 7, 1971); United States v. Scott, 413 F. 2d 932, 935 (C.A. 7, 1969), cert. den. 396 U.S. 1006, 90 S.Ct. 560, 24 L.Ed.2d 498 (1970).

Counts I–XIII of the instant indictment charge a conspiracy whereby certain companies in the horse-racing business received preferential treatment from defendants which caused said companies to flourish financially. In return for the preferential treatment, defendants received income by means of a series of stock transactions designed to conceal the scheme. The conspiracy counts involve all five defendants and charge violations of federal statutes.

Counts XVI–XIX charge Kerner and Isaacs with failing to report income received as an alleged bribe as ordinary income and with willfully subscribing to a false income tax return. The first charge concerns the fruits of the conspiratorial acts and the second concerns the attempt to conceal ownership of the fruits. Thus, these counts are factually related to the conspiracy and require similar proof. See Roselli v. United States, supra.

■■■ Counts XIV and XV charge Kerner with perjury before the grand jury and with making false statements to agents of the Government. There is an identity of proof between these counts and the conspiracy count since the alleged false statements are factually related to the alleged conspiratorial scheme. See United States v. Verra, 203 F.Supp. 87, 90 (S.D.N.Y.1962). Thus, it is apparent that all counts in the instant indictment are properly joined.

■■■ All defendants request severance on the grounds of prejudicial joinder and inculpatory statements of their co-defendants. In general, severance of defendants where conspiracy is charged requires a showing of exceptional circumstances. See United States v. Kahn, 381 F.2d 824, 838–839 (C.A. 7, 1967), cert. den. 389 U.S. 1015, 88 S.Ct. 591, 19 L.Ed.2d 661 (1967). See also United States v. Blue, 440 F.2d 300, 302 (C.A. 7, 1971). The danger of prejudice in this case can be avoided by admonitory instructions on the charges incidental to the conspiracy. See United States v. Turner, 274 F.Supp. 412, 416 (E.D. Tenn.1967); United States v. Cozzetti, 441 F.2d 344, 348–349 (C.A. 9, 1971). As to the inculpatory statements, Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), has no application in a conspiracy case to a statement of a co-conspirator made in furtherance of the conspiracy and during its pendency. This is an acknowledged exception to the hearsay rule. See Krulewitch v. United States, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790 (1949).

■ Miller contends that his inability to call his co-defendants as witnesses will prejudice him. Absent a clear showing of specific prejudice, the motion is without merit. See United States v. Johnson, 426 F.2d 1112, 1116 (C.A. 7, 1970). The desire of a defendant to call a co-defendant as a defense witness will not support a claim that separate trials would be less prejudicial than a joint trial since the co-defendant would be just as likely to assert his constitutional privilege against self-incrimination when called as a witness at a separate trial as he would as a defendant at a joint trial. United States v. Leighton, 265 F.Supp. 27, 31 (S.D.N.Y.1967).

He contends that the publicity given this case prejudices his right to a fair trial. No reason has been suggested to show that the publicity complained of will prevent a fair trial. See Sheppard v. Maxwell, 384 U.S. 333, 363, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966).

Miller also has moved for severance on the ground that the Government filed, then withdrew, memoranda of two informal conferences where he was promised that any statements made therein would not be used against him. The Government has answered the motion with a statement that it will not introduce any statement of Miller made at those conferences in the trial on the merits. While the Court is unable to find any relationship between prayer and the ground in the motion, it is clear that the Government's answer is sufficient.

In conclusion, all motions of all defendants concerning joinder and severance are denied.

*Motions for Bills of Particulars*

The number of requests for particulars sought by individual defendants are eight by Isaacs, twenty-six by McInturf, forty-six by Kerner, and two hundred seven by Miller. (Defendant Knight has moved to adopt each of these requests as his own.) Many of these requests are repetitious or patently beyond the scope of a bill of particulars. Of particular note is the fact that defendant Miller's request No. 50 asks for the identity of "certain persons" referred to in Count I, paragraph 18(a) of the indictment. Said paragraph, so far as we can determine, contains no reference to "certain persons."

The following particulars are granted:

Kerner: 5, 10, 11, 12, 13, 16, 18, 26, 41(a).

Miller: 2, 3, 24, 40, 43, 56, 57, 58, 63, 65, 73, 157, 175, 177, 181, 204.

Isaacs: 7, 8.

McInturf: 1, 7(c).

■ The Government has opposed other requests on a number of grounds. Particulars are supplied to clarify the nature of the offenses charged and the ultimate facts necessary to avoid surprise or double jeopardy. When more than this is requested, the request is in the nature of a demand for evidentiary detail. The Government is not required to supply its evidence in advance of trial. United States v. Long, 449 F.2d 288, 294–295 (C.A. 8, 1971); United States v. Boneparth, 52 F.R.D. 544, 545 (S.D.N.Y.1971). In addition, information supplied in the indictment need not be restated in a bill of particulars. United States v. Boneparth, supra. Requests for particulars equally available to the defendants should be denied. Mims v. United States, 332 F.2d 944, 946–947 (C.A.10, 1964). The Government's legal theory of the case is not obtainable by way of a motion for a bill of particulars. See Kempe v. United States, 151 F.2d 680 (C.A. 8, 1945); United States v. Dioguardi, 332 F.Supp. 7 (S.D.N.Y.1971); Turner v. United States, 426 F.2d 480, 483 (C.A. 6, 1970); United States v. Spomar, 217 F.Supp. 897 (N.D.Ill.1963). The following requests are denied:

Kerner: 1, 15, 19, 20, 22 (except as to subsection (d)), 28 (except to the extent supplied), 29, 30, 31, 33, 34, 35, 36, 39(a), 40, 41, 42, 43, 44.

Miller: 4, 5, 6, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 19, 20, 21, 22, 23, 25, 26, 27,

28, 31, 32, 33, 36, 37, 38, 39, 41, 42, 44, 45, 46, 47, 48, 49, 51, 52, 53, 54, 55, 59, 60, 61, 62, 64, 66, 67, 68, 69, 70, 71, 72, 76, 77, 78, 79, 80, 81, 82, 83, 85, 87–115, 117–151, 153 (except to the extent supplied), 154, 155, 156, 158, 159 (except to the extent supplied), 160, 161, 162 (except to the extent supplied), 164, 165 (except to the extent supplied), 166, 168, 169, 170, 171, 173, 174, 176, 178, 179, 180, 182, 183, 184, 185, 186, 187, 188 (as to the specification of applications, but granted as to general nature of the fraud), 189 (except to the extent supplied), 190, 191, 192, 193, 195, 196, 197, 198, 199, 200, 201, 202, 203, 205, 206, 207.

Isaacs: 1, 2, 3, 4, 5, 6.

McInturf: 2, 3, 4, 5, 6, 7(a)(b), 8, 9, 10, 11(a) (b)(c), 12(a) (b)(c), 13–26.

The defendants have filed numerous requests for particulars concerning the indictment. It should be noted at the outset that this nineteen-count indictment is sixty-four pages long. The conspiracy count describes in great detail the object of the conspiracy as well as charging sixty-eight specific overt acts. Thus, the indictment itself contains specific particulars to put defendants on notice of the specific charges against them so as to prevent double jeopardy and surprise.

In response to these requests, the Government has supplied much information. It appears that the following requests have been satisfied:

Kerner: 2, 3, 4, 6, 7, 8, 9, 17, 21, 23, 24, 25, 27, 37, 38, 39.

As to paragraph 32, the rulings made under Count I apply to Counts VI–XIII and are reaffirmed and adopted as to these counts.

As to paragraph 14, the motion is denied as to the calendar year 1966 because Count No. XVI gives the substance and information sought. The motion is granted as to the calendar year 1967.

Miller: 1, 18, 29, 30, 34, 35, 74, 75, 84, 86, 116, 152, 167, 172, 194.

As to paragraph 7, the Government has sufficiently answered except as to the nominee, which should be furnished.

We were advised by Government counsel during the oral argument that the Government had agreed in its answer to furnish all documents mentioned in Counts II through XIII; also documents of defendant in Government's possession; all documents of third parties in possession of the Government. Finally, the Government has agreed to furnish the originals of its own documents.

In sum, it is ordered that each of the motions of the defendants be, and same hereby is, denied except as heretofore indicated.