**UNITED STATES of America**

**v.**

**Theodore J. ISAACS and Otto Kerner, Jr.**

**No. 71 Cr. 1086.**

United States District Court, N. D. Illinois, E. D.

Motion to Sequester Jury Oct. 30, 1972.

Motion to Continue Dec. 19, 1972.

Order on Motion for New Trial April 19, 1973.

James R. Thompson, U. S. Atty., Samuel K. Skinner, First Asst. U. S. Atty., Chicago, Ill., Darrell McGowen, Dept. of Justice, Washington, D. C., Steven Kadison, Asst. U. S. Atty., Chicago, Ill., for the Government.

Paul Connolly, Williams, Connolly & Califano, Washington, D. C., Warren D. Wolfson, Chicago, Ill., for defendants.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

Before the Court for consideration is the motion of defendant Kerner to continue the trial of the case if the Government does not satisfy his request for particulars. Also before the Court is a companion motion for an order compelling the Government to provide forthwith greater particularization than heretofore provided as to paragraph 11, Count 1, "under the sanction of contempt for failure to comply."

The Grand Jury charged that it was part of the conspiracy that shares of stock would be made available to Kerner and Isaacs:

". . . by a method constituting a personal advantage to them, in order

to influence the good will and favor of Otto Kerner, Jr., as Governor of the State of Illinois, and of persons connected with his administration, and by such influence, to cause defendant Kerner and the persons connected with his administration to act favorably in performing their official and public functions, decisions, actions, and duties with respect to matters involving CTE, its tenants, lessees, subsidiaries and affiliates."

In a motion for particulars, Kerner asked for specification of the "public functions, decisions, actions and duties" to which the paragraph referred. We granted the request by an order filed May 30, 1972.

The Government filed its compliance with that order on July 26, 1972. Therein it stated that, as Governor, Kerner had the responsibility for appointing the Director of the Illinois Department of Revenue who was responsible for the collection of revenue from the horse and harness racing industry,[1] and for appointing the members of the Illinois Racing Board[2] and the Illinois Harness Racing Commission that had responsibility for awarding racing dates and otherwise regulating the industry. It stated further that, as Governor, Kerner was required to make decisions and to take actions concerning legislation affecting the racing industry which the Illinois General Assembly submitted to him. Additionally, he was required to submit proposed legislation affecting the racing industry to the General Assembly.

At the third pre-trial conference on October 24, 1972, Kerner's counsel challenged the adequacy of that response for the first time. He argued convincingly that there were warehouses of legislative records concerning the years when Kerner was Governor, thus making it impossible to prepare his defense unless the Government identified the bills it contends were affected by the alleged bribe. In our order of October 30, 1972,

we expressed our opinion that the request that any specific legislative or executive action which the Government contends resulted from the alleged bribe be identified had merit and the Government should supply the information.

The Government subsequently filed a statement contending (1) that all appointments to the Illinois Racing Board and the Illinois Harness Racing Commission, particularly the appointment of defendant Miller as Chairman of the former, were actions favorable to the specified racing interests; (2) that forty-six specific bills introduced in the Illinois General Assembly during Kerner's term as Governor were acted upon by Kerner in a manner favorable to the aforesaid racing interests; and (3) that both Kerner and Isaacs intervened with members of the racing board and the harness commission on behalf of these racing interests regarding the allocation of racing dates. The statement also contains a fourth category of actions which would seem to preserve the Government's right to introduce proof of other executive or legislative acts.

The instant motion for greater particularization calls for:

"1. An identification of each appointment to the Illinois Racing Board and the Illinois Harness Racing Board which the government contends was the result of a bribe; a statement as to whether the appointee knew that he had any obligation during his term of office to act favorably toward the entities listed in the government's Statement of Compliance and a description of favorable action taken by such appointee[s] during the term[s] of office.

"2. A statement of the specific action taken by the governor with respect to each of the forty-six bills listed in response numbered '2' of the Statement of Compliance which is alleged to be the 'favorable' action relied upon to support the contentions of ¶ 11

---

1. He appointed defendant Isaacs to this post.

2. He appointed defendant Miller as Chairman of this body.

of Count I of the Indictment; a brief description of the nature of the bill and a brief statement as to the manner by which the government contends the bill was of benefit to the Everett racing interests, and a statement as to whether the particular action taken by the governor is contended to be the result of a bribe.

"3. A statement identifying the particular member[s] of the Racing Board and Harness Racing Commission with whom Governor Kerner or Theodore Isaacs is said to have 'intervened'; the time or approximate times of such intervention; the identity of the entity on whose behalf the intervention took place and a brief description of the 'intervention' referred to.

"4. A statement identifying the problems referred to in the Statement of Compliance and relating each particular problem to an identified state regulatory agency. The statement should include as well an identification of the person or persons who allegedly acted at the direction of Kerner and those who acted at the direction of Isaacs, and it should also describe briefly, so as to be recognizable, the decision made and how it favored the Everett racing interests."

In his brief in support of these motions, counsel for Kerner states:

"The government's response to that order is broken down into four numbered answers, each of which escalates in evasiveness and obfuscation. The conclusion is inescapable that the government does not intend to comply with the Court's orders, either because it cannot support its allegations or because it wishes to deter the defendant from preparing his defense. The result of noncompliance is contemptuous and either reason is inexcusable." (pp. 2–3)

"The first numbered response by the prosecutor is better than the rest but only by contrast. Objectively it is as much an avoidance of honesty as the rest . . .

". . . [The United States Attorney's] sweeping assertion sounds more Joseph McCarthy-esque than responsible. This Court should, prior to trial, make a relentless inquiry of Mr. Thompson to ascertain whether he has any substance to the contention he makes in this response." (p. 6)

The thrust of these motions is discovery of the Government's proof. The function of a bill of particulars is to prevent surprise or double jeopardy; it is not a discovery device. We have previously ruled on that question in this case. See 347 F.Supp. 743, 762.

As counsel agreed at the hearing on January 20, 1972, the cut-off date for pre-trial motions was March 20, 1972. Fifty motions were filed prior to that date by defense counsel. We ruled on most of these, including Kerner's request for particulars as to ¶11, Count 1, in our order of May 30, 1972. The Government complied with that ruling on July 26, 1972. Kerner's counsel ignored the statement of compliance until three weeks before the original trial date. Now three weeks before the second trial date they raise the issue again and tie it to a motion for a continuance. This time the motion is totally lacking in merit.

Accordingly, it is ordered that these motions be, and the same hereby are, denied.

## MEMORANDUM

## ON MOTION TO SEQUESTER JURY

Before the Court for consideration is the Government's motion to sequester the jury from the time of its selection to the return of the verdict. The defendants oppose sequestration principally on the ground that it would prejudice them to be tried by a jury that was sequestered for an extended period spanning the Thanksgiving-Christmas holiday season. But see, United States v. Holovachka, 314 F.2d 345, 352–353 (C.A.7, 1963). Counsel for defendant Kerner has stated to the Court that he will not move for a mistrial or a new trial on the ground that a juror was

exposed to prejudicial publicity during the course of the trial.

The matter has given the Court an unusual amount of difficulty. The Court recognizes that sequestration works a hardship on the jury, especially at this time of year. The Court sought to avoid this problem and exerted considerable effort to persuade counsel to try the case last summer, free from holiday pressures. Unfortunately, because of the numerous records involved and other factors requiring much time and study in preparation for trial, it was not feasible to set the case at an earlier date.

■ Where, as here, the defendants are public figures and there are pronounced feelings among the citizenry concerning the case, the Court believes that the possibility of one or more jurors being approached for one side or the other is great. The Court recognizes that the attorneys in this case are highly reputable and would condemn such an approach by anyone. However, their condemnation would not prevent a mistrial. Any private communication with a juror, direct or indirect, concerning a matter he is trying, is presumptively prejudicial. To avoid a new trial, the Government must clearly show that the contact was harmless to the defendant. Remmer v. United States, 347 U.S. 227, 229, 74 S.Ct. 450, 98 L.Ed. 654 (1953), 350 U.S. 377, 76 S.Ct. 425, 100 L.Ed. 435 (1955). Under the circumstances, sequestration of the jury is indicated.

Counsel for Judge Kerner has indicated that he plans to petition for a writ of prohibition against sequestration. This order is made in advance of the trial date to permit prompt disposition of the question, that is, before the trial date.

### ON MOTION FOR NEW TRIAL

Defendant Isaacs has filed a motion for a new trial. The Court has this day passed to the Clerk for filing a memorandum opinion overruling the motions for a directed verdict and, in the alter-

### ORDER

native, for a new trial filed by Otto Kerner, Jr. Some of the grounds relied upon by Isaacs are similar to or the same as relied upon by Kerner, and the memorandum filed in the Kerner case insofar as applicable is adopted by the Court in this ruling on Isaacs' motion.

The grounds relied upon by Isaacs are for the most part general and lacking in merit. For example, Isaacs claims that the Court erred in failing to grant him a separate trial. This question was carefully considered in a memorandum heretofore filed. In the opinion of the Court it is lacking in merit.

Isaacs claims that the Court erred in not granting a mistrial due to statements made by the Government's attorneys during their final rebuttal arguments. We do not agree.

■ Isaacs also claims that the Court erred in allowing Marjorie Everett to relate mental processes when asked why she made the CTE stock available, and to permit William Miller to relate his and Mrs. Everett's mental processes when asked why he told Kerner and Isaacs of Mrs. Everett's stock offer. In the opinion of the Court it did not commit prejudicial error in its rulings on questions of evidence.

Grounds 4 and 5 complain of the action of the Court in refusing to grant a motion for acquittal at the close of the Government's case and at the close of all the evidence, and in failing to strike certain questions asked by District Attorney Thompson. In the opinion of the Court these grounds are without merit, except as to Counts V, VII, X, XI and XII. The evidence showed that the mailings of the instruments referred to in Counts X through XII were too remote to establish guilt under the Mail Fraud Statute; that, in Count VII, the proof of mailing was insufficient; and that, in Count V, the proof of a connection between the requisite intent and the interstate travel was insufficient.

Isaacs also claims that the Court erred in refusing to tell defense counsel before

final argument of the instructions it intended to give to the jury, and in ordering the jury sequestered, and in refusing to give certain instructions. In the opinion of the Court these contentions are likewise without merit.

Having considered Isaacs' motion for a new trial and each ground urged in its support and believing that all are lacking in merit, it is accordingly ordered that the motion be, and the same hereby is, denied.

## MEMORANDUM

## ON MOTION FOR JUDGMENT OF ACQUITTAL

Defendant Kerner has moved for a judgment of acquittal or, alternatively, for a new trial. The motions state that their grounds are set forth in the accompanying memorandum. That document is 76 pages long and incorporates by reference all prior motions, memoranda, which encompass hundreds of pages, and the transcript, which is several thousand pages long. The multitude of arguments thus raised precludes an exhaustive written consideration of the merits of the post-trial motions. The Court is compelled to assume that the reader is thoroughly familiar with the entire record of this lengthy and complex case. We are further required to partially limit this opinion to matters on which the Court has not adequately explained its reasoning.

■ Initially, Kerner attempts to impeach the verdict with an argument that it was impossible for the jury to conscientiously weigh the evidence on each count as to each defendant during the approximately fifteen hours of deliberation. This argument has a speculative basis which cannot sustain the motion.

Kerner says that the Court reserved decision on certain of the counts. The fact is that the Court overruled the motions as to all counts without prejudice to the defendants to renew. The Court pointed out that it would read and study the briefs an additional time and after doing so if it felt that it had erred, it would reconsider some of the questions and turn in a memorandum opinion. Tr. 5666–67.

■ Each of Counts II through V are based on aspects of the CHR transaction. Kerner contends that there is no proof that defendants' purchase and sale of CHR stock was part of a bribery scheme. The proof showed that defendants purchased this stock at less than its real value; that the ultimate source of these shares was the same as for the CTE shares; that defendants sold their CHR shares within a year at a price possibly less than the real value but five times the purchase price; and that the profit acquired through the CHR sale was used to pay off the loan with which the CTE shares were purchased. This circumstantial evidence is sufficient to permit the inference that the CHR transaction was part of the overall bribery scheme as charged in the indictment.

■ The Government is not required to prove that the defendants had actual or constructive knowledge of interstate travel or of the use of interstate facilities to promote the alleged bribery scheme in order to make a case under the Travel Act. See 18 U.S.C. § 1952; United States v. Miller, 379 F.2d 483, 486 (C.A.7, 1967); United States v. Roselli, 432 F.2d 879, 891 (C.A.9, 1970). The Court is of the opinion that the deposit of a check in interstate banking channels, regardless of whether the check crosses state lines, is a use of an interstate facility within the meaning of the Travel Act. See United States v. Wechsler, 392 F.2d 344, 347 n. 3 (C.A.4, 1968), cert. den. 392 U.S. 932, 88 S.Ct. 2283, 20 L.Ed.2d 1389.

Count V charges that between December 16, 1966, and April 1, 1967, the defendants caused Miller to travel between the Northern District of Illinois and Miami, Florida, with intent to promote, manage and carry on, etc. bribery in violation of Illinois law. The Travel Act requires that the interstate travel be accompanied by such an intent. 18 U.S.C. § 1952(a). The proof in this case showed that Miller had a winter home near Miami, Florida, where he had spent

every winter for seventeen years. The proof also showed that during the 1966–67 winter a meeting was held in Florida attended by two of the alleged conspirators and others, that concerned CHR stock ownership and related corporate problems. The Court does not recall any proof that the purpose of this interstate travel was to promote, manage or carry on the alleged bribery scheme even though Miller testified for the Government under an immunity agreement.

As we understand the Congressional intent behind the Travel Act, the purpose behind the interstate travel must be the promotion, etc., of an unlawful activity. Absent proof connecting the intent to engage in the unlawful activity with the specific interstate travel, or use of interstate facilities, a conviction under the Travel Act cannot be sustained. See United States v. Hawthorne, 356 F.2d 740, 741–742 (C.A.4, 1966). The evidence in this case, as recalled by the Court, permits a strong inference that the alleged interstate travel was for a purpose and with an intent unrelated to the alleged unlawful activity. We feel this inference is sufficiently strong to create a substantial doubt on the narrow question of the intent behind the travel in question.

For the foregoing reasons, judgment of acquittal must be granted as to Count IV., but denied as to Counts II through

The sufficiency of the evidence to prove a scheme to defraud within the purview of the Mail Fraud Statute is a substantial one. The Court is of the opinion that the evidence was sufficient to submit this issue to the jury under the reasonable doubt standard.

As to the jurisdictional elements of the mail fraud counts (VI through XIII), with the exception of Count VII, the only point that concerns the Court is the question of whether the particular mailings are reasonably viewed as an integral part of or in furtherance of the alleged scheme. The Court has no doubt that Counts VI, IX and XIII were proven beyond a reasonable doubt.

As to Count VII, there is a question whether a mailing of the check in question was ever proved. The bank officer testified that the check's deposit was duly listed on the bank's mail register; however, he also testified that he had recently learned that this register is sometimes used to record deposits from the night depository that were not received by mail. Tr. 2071–72, 2077. Kerner testified that he recalled receiving and endorsing this check but could not recall the manner in which it was deposited. He further testified that he was probably in Springfield on the days before and after the date of deposit. Tr. 6619–21. This proof is insufficient to show whether the alleged use of the mails ever occurred when measured by the reasonable doubt standard. See United States v. Brickey, 426 F.2d 680, 684 (C.A.8, 1970); United States v. Doran, 299 F.2d 511, 514 (C.A.7, 1962).

The mailing charged in Count VIII was made by the Antioch Savings and Loan of a bulk shipment of checks, one of which was a check deposited by Kerner in his account with Antioch, to the American National Bank for deposit in Antioch's account with the American National. There was proof that this check constituted the proceeds of bribery. Since payment by check does not become final until it is paid by the drawee bank, this mailing was part of the collection process and, as such, reasonably could be foreseen and viewed as an integral part of the alleged bribery scheme. See United States v. Chason, 451 F.2d 301, 303 (C.A.2, 1971).

The mailing charged in Count X was by the Standard Bank of a bank statement of account and cancelled checks to one of its depositors, George Schaller. One of the cancelled checks was payable to defendant Isaacs, and, according to the proof, represented the proceeds of bribery. Since this mailing was subsequent to final payment in the collection process, in the opinion of the Court it was too remote from the alleged bribery scheme reasonably to be viewed

as an integral part of the scheme or as in furtherance of said scheme.

 Counts XI and XII involve mailings of bank statements and cancelled checks on accounts of Kerner and Isaacs, respectively, by a bank. These accounts were opened with this bank by the non-mail deposit of funds representing the proceeds of the alleged bribery. In the opinion of the Court, the mailings on which these counts are based cannot reasonably be viewed as having been an integral part of the alleged scheme or in furtherance of it. The mailings, thus, are too remote from the scheme to support the charges.

Accordingly, judgment of acquittal must be granted as to Counts VII, X, XI and XII, and denied as to Counts VI, VIII, IX and XIII.

 Kerner claims that the Court's greatest error was its submission of the perjury count (XIV) to the jury. In his post-trial memorandum, Kerner has raised a new ground for holding the perjury count duplicitous, that is, the assertion that there is a distinction between the question of whether Kerner ever attempted to influence racing dates and the question of whether he ever had conversations concerning the changing of racing dates. In the opinion of the Court, in the context of grand jury testimony in question, this distinction is too subtle to support a claim of duplicity. We previously overruled a pre-trial motion to dismiss the count on the ground of purported duplicity. See United States v. Isaacs, 347 F.Supp. 743, 755 (N.D.Ill., 1972). The question of conversations is subsidiary to the basic question whether Kerner attempted to influence racing dates.

Branston v. United States, 409 U.S. 352, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973)

is not in point since we did not face the problem of false negative implications.

 Kerner raises for the first time in his post-trial motions the question of the constitutionality of the abolition of the two-witness rule to sustain a charge of perjury. In the opinion of the Court, this is a legislative, not a constitutional, problem. See United States v. McGinnis, 344 F.Supp. 89, 92 (S.D.Tex., 1972); United States v. Clizer, 464 F.2d 121, 123 (C.A.9, 1972). Additionally, the Government presented two witnesses whose testimony contradicted the grand jury testimony that was the subject-matter of Count XIV. A third witness, called by the defense, when cross-examined, gave further substantive support to the charge. Tr. 6004–06.

The questions of whether the proof of a violation of 18 U.S.C. § 1001 was sufficient to sustain a conviction or whether the indictment stated an offense against the United States are serious ones. As to the factual question, we believe that the evidence was sufficient for the jury to find guilt beyond a reasonable doubt. We also believe that our ruling on the motion to dismiss is supported by the cases. See United States v. Isaacs, 347 F.Supp. 743, 755–756 (N.D.Ill., 1972).

Kerner concedes that the income tax evasion charge "necessarily stands or falls with the charge of bribery," but contends that the proof of bribery was contrary to the weight of the evidence. (Defendant's Brief, p. 39). In the opinion of the Court the proof was sufficient to sustain a conviction on income tax evasion; Illinois bribery law is not particularly "subtle [or] sophisticated" (See Defendant's Brief, p. 51); and our instructions on bribery in our opinion were both correct and adequate.[1]

---

1. The Illinois bribery statute does not require as an essential element any action in response to the bribe. Kerner argues that there would have been no basis for a charge of bribery had the CTE purchase been consummated in 1962 instead of 1966. This argument ignores proof that the only people who purchased CTE shares at the issue price of $1,000 per share were certain directors who rendered valuable services in connection with the reorganization and defendants Isaacs and Kerner. (Ex. 504A; 12–28–62–2) It also ignores the proof that at about the same time the November, 1962 buy-sell agreement · was made, CTE stock was sold for $2,500 per share to Modie Spiegel. (Ex. 504A; 11–2–62)

The claim of error on the ground that the Court refused Kerner's motion for severance based on United States v. Echeles, 352 F.2d 892 (C.A.7, 1965), is without merit. In *Echeles*, the exculpatory statements of the co-defendant were made on the record and under oath at an earlier trial which was the basis for the subsequent subornation of perjury charge against Echeles. To grant a severance under our circumstances would destroy the use of joint trials as provided under the rules of criminal procedure. See United States v. Johnson, 426 F.2d 1112, 1116 (C.A.7, 1970); United States v. Kahn, 381 F.2d 824, 841 (C.A. 7), cert. den. 389 U.S. 1015, 88 S.Ct. 591, 19 L.Ed.2d 661 (1967).

▪ Kerner complains of the Court's refusal to read him its charge prior to instructing the jury. He contends that this action "was at variance with accepted practice and denied counsel a fair opportunity to object to the charge as given." His contention is founded on an erroneous statement of fact. This Court does not recall ever hearing of any federal judge following such a practice. We were informed that only one of the fifteen district judges in Chicago, Judge Campbell, advocates this procedure. This Court has never provided counsel with its charge in advance. In this case, the Court worked on and made changes in the charge through the day before it was delivered. Counsel was advised of the substance of the charge more than three days before it was delivered through the Court's action on the 405 jury instructions proposed by counsel. Our action is consistent with Rule 30, F.R.Cr.P.

▪ Kerner contends that certain testimony by Miller apparently concerning Mrs. Everett's state of mind in making the stock offer is incompetent. The Government responds that this testimony was in answer to the question, "Why did you relay Mrs. Everett's offer of stock to Governor Kerner and Mr. Isaacs?" (Tr. 2952) It contends that the question and answer relate only to Miller's own intent and, as such, is both relevant and competent. Even if viewed as opinion testimony as to Mrs. Everett's state of mind, the testimony had a solid foundation in the totality of Mrs. Everett and Miller's combined testimony to permit the jury to weigh its credibility. In the Court's opinion its admission was not prejudicial error, if error at all.

▪ The questions to former racing board members as to how they would have voted had they known the Governor was a shareholder in an applicant for racing dates are not impermissible hypothetical questions but go to the factors considered by the former board member in determining his vote, that is, to his state of mind. A person is competent to testify to his own state of mind. See also Bettman v. United States, 224 F. 819, 830 (C.A.6, 1915).

If any mistake was made in stating the theory of Kerner, the responsibility rests with counsel for their failure to present an adequate statement of his theory as provided for in the First Pretrial Order and Stipulation or for their failure to advise the Court of the error.[2] The extremely general nature of proffered statement of Kerner's theory compelled the Court to extract his theory from his counsel's opening statement to the jury.

Some of the instructions given the jury that Kerner contends were error involve questions of law that are not settled; a few are deemed as frivolous. As to Kerner's proposed instructions which he contends the Court erroneously refused to charge, these too involve questions of law. The Court gave careful consideration to all proposed jury instructions, and is of the opinion that it did not commit prejudicial error in its rulings thereon. As to purported error II.D.(2)(b), the Court instructed the jury that campaign contributions were not illegal by themselves. Tr. 7454.

---

2. Counsel was permitted to submit revised instructions of any asserted errors in the statement of its theory after the Court instructed the jury.

Counsel on both sides and the Court advised the jury that statements of counsel are not evidence and if any such statements contradict the evidence the jury shall disregard the same. See, e. g., Tr. 1217.

The closing argument of government counsel that the personal integrity of the United States Attorney was in issue was proper in light of the defense claim that the indictment was ". . . the product of a very busy imagination of a very vigorous and ambitious prosecutor . . . The attempt to torture the facts into criminal charges is manufactured, unjustified, unreasonable and not in good faith." Tr. 1305. See United States v. Hoffa, 349 F.2d 20, 50–51 (C.A.6, 1965).

For the indicated reasons, it is ordered that the motion for a judgment of acquittal be, and the same hereby is, granted as to Counts V, VII, X, XI, and XII, and denied as to the other counts. It is further ordered that the motion for a new trial be, and the same hereby is, denied.