**In re John Dan WHITE, Debtor.**

**BUTLER, SNOW, O'MARA, STEVENS & CANNADA**

**v.**

**Derek A. HENDERSON, Trustee for the Estate of John Dan White.**

No. 3:94cv61.

United States District Court, S.D. Mississippi, Jackson Division.

July 18, 1994.

---

6. The number after an attorney's name represents the year of admission to the bar.

L.F. Sams, Jr., Mitchell, McNutt, Threadgill, Smith & Sams, Tupelo, MS, for plaintiff Butler, Snow, O'Mara, Stevens & Cannada and Charles F. Johnson III.

Howard M. Hoffman, Holleb & Coff, Chicago, IL, for defendants Derek A. Henderson, Trustee for Estate of John Dan White.

Francis K. Horton III, U.S. Dept. of Justice, Office of U.S. Trustee, Jackson, MS.

Ronald McAlpin, U.S. Trustee, Jackson, MS.

1. The debtors are John Dan White, Rosemary C. White, Andrew Jackson Corporation, White Enterprises, Inc., Termplan, Inc., Gulf States Char-

## RULING

LITTLE, District Judge.

Before the court is the trustee's motion to disqualify the undersigned and every other district and appellate court judge sitting within the geographic Fifth Circuit from hearing this consolidated bankruptcy action. For the reasons that follow, we decline to be so emasculated.

### I.

Between May 1992 and March 1993, eight related debtors [1] filed petitions for bankruptcy relief in the United States Bankruptcy Court for the Southern District of Mississippi. The bankruptcy court later appointed a single trustee to represent the related debtors' estates, and the trustee began to investigate the Mississippi based law firm that represented the debtors pre-bankruptcy ("the law firm" or "the firm"). On 24 January 1994, the firm instituted adversary proceedings against the trustee, seeking a declaration that it committed no actionable wrong in connection with its prior representation. The trustee responded by filing an adversary proceeding against the firm and the attorney in charge of the debtors' pre-bankruptcy representation. The trustee sought in excess of $90 million in damages for, *inter alia*, breach of fiduciary duty and violations of the Racketeer Influenced and Corrupt Organizations ("RICO") Act.

On 4 February 1994, the trustee filed a motion in the United States District Court for the Southern District of Mississippi seeking withdrawal of the trustee's adversary proceeding from the bankruptcy court. While that motion was pending, the chief judge of the Southern District of Mississippi advised the chief judge of the United States Court of Appeals for the Fifth Circuit that "[h]aving consulted with the judges of th[e] district ... it [is considered] appropriate and in the best interest of justice to request ... assign[ment of] a judge from outside this district to handle these cases." *Butler, Snow, O'Mara, Stevens & Cannada v.*

ter Company, Universal Agency, Inc., and Guardian Trust Company.

*Henderson (In re John Dan White)*, No. 94–cv–61 (Order of Chief Judge William H. Barbour, Jr. dated 9 February 1994). The chief judge of the Fifth Circuit then designated the undersigned district judge of the Western District of Louisiana to preside over these "and any subsequently filed related cases." *Id.* (Order of Chief Judge Henry A. Politz dated 10 February 1994).

On 10 March 1994, the undersigned held a hearing on the trustee's withdrawal motion and on 18 March entered an order withdrawing both the trustee's and the firm's adversary proceedings from the bankruptcy court. *Id.* (Order dated 18 March 1994, 172 B.R. 841). In this order, this court construed the trustee's complaint as an answer and counterclaim to the law firm's complaint and also withdrew from the bankruptcy court authority to review the trustee's counsel's requests for payment of fees and expense reimbursements. *Id.* Pursuant to subsequent orders of this court, the law firm amended its complaint to add as a party plaintiff the attorney in charge of the debtors' pre-bankruptcy representation and the trustee revised his complaint to set forth with greater particularity his RICO claim.

Then, on 13 May 1994, the trustee filed the instant motion to disqualify the undersigned and every other district and appellate judge sitting within the geographic Fifth Circuit from hearing this action. The trustee informed the court that a judge of the United States Court of Appeals for the Fifth Circuit ("the appellate judge") had been a partner in the firm during time periods critical to the case. According to the trustee, therefore, a redolence of partiality would pervade the disposition of this matter by any judge appointed to serve within the Fifth Circuit: The reviewing, supervisory, and collegial relationships that exist between the appellate judge and each of other appellate judges of the Fifth Circuit, and between the appellate judge and each of the district judges of the Fifth Circuit, would cause an objective observer to doubt these adjudicators' impartiality.

The law firm opposed the trustee's motion, arguing that the trustee's disqualification motion was untimely in that the trustee had known of the appellate judge's former affiliation with the firm for some two years prior to bringing a motion to disqualify and had himself previously opposed the firm's motion to disqualify a judge of the United States Bankruptcy Court for the Southern District of Mississippi. The law firm argued that the appellate judge's potential exposure to civil liability did not merit the relief sought.

At oral argument, the trustee conceded that the appellate judge was not personally involved with the firm's representation of the debtors and had withdrawn from the firm over two years prior to the debtors' first petition in bankruptcy. The trustee contended, however, that the appellate judge (i) served on the firm's conflicts committee, (ii) will be deposed and may be called as a witness at trial, and (iii) if the trustee is successful on his claims, will be jointly and severally liable with the firm and its past and current partners for millions of dollars in damages. The trustee concluded that although he believed "in his heart of hearts" that the undersigned could serve as an impartial adjudicator in the instant case, he believed that "a 'reasonable' third person, knowledgeable of the circumstances, would harbor doubts about the impartiality [of a district or appellate judge sitting within the Fifth Circuit]" hearing this case and that disqualification was therefore warranted. *See In re Continental Airlines Corp.*, 901 F.2d 1259, 1262 (5th Cir.1990) (setting forth an objective recusal standard).

## II.

██ In raising the "appropriateness" of an Article III judge sitting in the Fifth Circuit hearing this case, the trustee invokes 28 U.S.C. § 455(a),[2] which states: "Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a) (1993). The purpose of this statute "is to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible." *Liljeberg v. Health Servs. Corp.*, 486

---

2. The trustee eschews application of any other subsection of the statute.

U.S. 847, 865, 108 S.Ct. 2194, 2205, 100 L.Ed.2d 855 (1988);[3] *see also Liteky v. United States,* 510 U.S. ——, ——, 114 S.Ct. 1147, 1153–54, 127 L.Ed.2d 474, 486 (1994) ("what matters is not the reality of bias or prejudice but its appearance"). Thus, under the statute, recusal is mandated whenever an objective observer, "knowing all the circumstances," would harbor doubts about a judge's impartiality. *Liljeberg,* 486 U.S. at 861, 108 S.Ct. at 2203; *see also Aetna Life Ins. Co. v. Lavoie,* 475 U.S. 813, 825, 106 S.Ct. 1580, 1587, 89 L.Ed.2d 823 (1986) ("to perform its high function in the best way, justice must satisfy the appearance of justice." (internal quotation marks, citation omitted)); *United States v. Columbia Broadcasting Sys.,* 497 F.2d 107, 109 (5th Cir.1974) (impartiality described as the palladium of our judicial system).

### A.

■ Applying the law to the facts, the trustee argues that the statute in question mandates disqualification of all district and appellate judges within a geographic federal circuit whenever the personal interests of an appellate judge of the circuit are at stake. In support of this proposition, the trustee reviews the jurisprudence of judicial recusal and presents precedent of alleged likekind scenarios. We will mention but a few of the references coupled with our evaluation of their relevance.

The trustee finds succor in *United States v. Isaacs,* 493 F.2d 1124 (7th Cir.1974). In *Isaacs,* a criminal indictment was brought in the United States District Court for the Northern District of Illinois against Otto Kerner, a judge of the United States Court of Appeals for the Seventh Circuit, stemming from the judge's alleged breach of public trust while Governor of Illinois. A district judge from a neighboring circuit was designated to preside at the trial. *See United States v. Isaacs,* 364 F.Supp. 895 (N.D.Ill. 1973); *see also United States v. Isaacs,* 351 F.Supp. 1323 (N.D.Ill.1972). Upon conviction, three appellate judges from other than the Seventh Circuit heard the appeal. *See United States v. Isaacs,* 493 F.2d 1124 (7th Cir.1974).

According to the trustee, the reasons for the foreigner intervention at the trial and appellate level were neither recorded nor necessary. Rather,

> [the reasons were] so obvious they were not discussed. No doubt, it was determined from the onset that the impartiality of any judge on or within the Seventh Circuit might reasonably be questioned, even though no actual impartiality existed because there, as here, a sitting circuit judge was exposed to significant liability.

Motion to Disqualify at 6.

Although the trustee is correct that the district court's reported memorandum rulings do not detail the circumstances surrounding the designation of an out-of-circuit district judge,[4] the appellate panel's opinion does explain the circumstances surrounding designation of the out-of-circuit appellate judges: Two of the eight active appellate judges (including the chief judge) of the Seventh Circuit served as character witnesses for the defendant judge at trial and recused themselves from hearing his appeal; thereafter, the other five active judges (aside from the defendant) recused themselves. The chief judge of the Seventh Circuit then advised the Chief Justice of the United States of the exhaustion of judicial resources, and the Chief Justice designated three judges— necessarily from outside the circuit—to serve

---

3. In *Liljeberg,* a case not cited by the trustee, the Supreme Court reviewed the Fifth Circuit's appraisal of activities undertaken by a federal district judge sitting in New Orleans. 486 U.S. at 861, 108 S.Ct. at 2203. The Fifth Circuit itself had initially evaluated, and without difficulty appraised the district judge's behavior. *See Health Servs. Acquisition Corp. v. Liljeberg,* 796 F.2d 796 (5th Cir.1986), *aff'd* 486 U.S. 847, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988); *see also United States v. Collins,* 972 F.2d 1385 (5th Cir.1992) (upholding the district judge's criminal conviction).

4. It does not appear that the appointment was the subject of either an objection from the defendant or the government. We also note that the government was represented by one who himself would later be a multiterm governor of Illinois and assisted by one who would later become a cabinet officer and even later chief of staff to a President.

on the appellate panel. *See id.* at 1168. There is thus no need for speculation as to the reason for the appointment of an appellate panel from without the Seventh Circuit.

We consider it likely that the events that transpired at the district court level approximated those that transpired at the appellate level, as documented in the appellate panel's opinion. That is, the district judges of the Northern District of Illinois likely recused themselves from hearing the government's criminal case against the defendant, a former Governor of Illinois and an active appellate judge. The chief judge of the district likely advised the chief judge of the court of appeals of the recusal. The chief judge of the court of appeals—who would later serve as a character witness for the defendant and recuse himself from considering the defendant's petition for mandamus, appeal, and petition for rehearing *en banc*—likely disqualified himself from designating a district judge to hear the defendant's criminal case. The chief judge then likely informed the Chief Justice of these facts, and the Chief Justice, in turn, likely designated the district judge who presided at trial.

Although it is unclear whether (assuming that this chain of events actually occurred) the Chief Justice considered it a wise practice to designate a district judge from outside the defendant appellate judge's circuit to hear his criminal case, we are reasonably certain that this decision was not made at the district court level. Under the relevant statute, the only issue properly before the district judge is whether "a 'reasonable man,' were he to know all the circumstances, would harbor doubts about [the] judge's impartiality." *See In re Continental Airlines Corp.,* 901 F.2d at 1262. We limit our focus to this issue.

## B.

As the trustee has noted, there is a dearth of cases directly addressing the propriety of

a district judge presiding over a civil case involving a sitting appellate judge of the same circuit. The trustee argues, however, that the *Isaacs* case, in which the district judges of the Northern District of Illinois probably recused themselves from hearing the criminal case in which a Seventh Circuit appellate judge was a defendant, provides analogous support. We find *Isaacs* distinguishable.

First, and most important, the interests at stake in *Isaacs* were different from those in the case at hand. The defendant judge in *Isaacs* was subjected to a *criminal* prosecution for breaches of public confidence while governor. The judge in this case is subject to potential, imputed *civil* liability for the acts of his former law partners.

Second, the size and attendant collegiality of the federal circuits at issue are distinguishable. The Seventh Circuit at the time of *Isaacs* had eight active appellate judges and twenty-five active district judges. The Fifth Circuit today has seventeen appellate judgeships and seventy-eight district judgeships.

Third, the proximity of the defendant judge's circuit station to the district court in *Isaacs* is clearly distinguishable from the case at hand. The appellate judge in *Isaacs* sat in Chicago, as did all twelve of the district judges of the Northern District of Illinois. By contrast, the appellate judge in the present case is stationed in Jackson, Mississippi, and the undersigned is stationed nearly 200 miles away, in Alexandria, Louisiana.

The trustee also seeks to analogize cases concerning the propriety of a federal judge presiding over a case in which he himself, or a close relative, has a financial interest. Again, we find these cases distinguishable;[5] indeed, the trustee himself concedes that the undersigned has no personal or financial in-

---

**5.** A reasonable man would certainly suspect partiality in a case where a judge approved a $700,-000 attorney fee and joined the payee law firm immediately thereafter, *In re Continental Airlines Corp.,* 901 F.2d 1259 (5th Cir.1990), where the judge was personally and economically linked to the defendant, *United States v. Mavroules,* 798 F.Supp. 61 (D.Mass.1992), where the judge's

cousin, who was also godmother to one of his children, was a victim and principal witness in the case, *In re Faulkner,* 856 F.2d 716 (5th Cir. 1988), and where the judge's father's law firm could benefit financially from a favorable decision, *Potsshnick v. Port City Constr. Co.,* 609 F.2d 1101 (5th Cir.1980).

terest in the underlying litigation. The only charge alleged is that, in light of the institutional relationship between the undersigned and the appellate judge, an objective observer would harbor doubts about the undersigned's ability to remain impartial.

### C.

Although they escaped the trustee's notice, the court takes cognizance of a trio of reported cases in which Fifth Circuit appellate judges have heard the criminal appeals of sitting district judges within the circuit. In *United States v. Collins*, 972 F.2d 1385 (5th Cir.1992), a panel of Fifth Circuit appellate judges affirmed the conviction of Robert F. Collins, a federal district judge appointed to serve in New Orleans, Louisiana. Likewise, in *United States v. Nixon*, 816 F.2d 1022 (5th Cir.1987), a panel consisting of two Fifth Circuit appellate judges and one judge from the Second Circuit [6] affirmed the perjury conviction of Walter L. Nixon, Jr., a federal district judge appointed to serve in Biloxi, Mississippi.[7] Although these cases do not present the factually apposite case, they do undermine the trustee's argument that, under § 455(a), the appearance of collegiality between judges of a federal circuit prevents one from passing upon the integrity or credibility of another. *See Liljeberg*, 486 U.S. at 865 n. 12, 108 S.Ct. at 2205 n. 12.

### III.

Intra-circuit collegiality aside, then, the trustee's motion rests upon the alleged subordinate relationship of district judges to appellate judges within one federal circuit. The trustee argues that appellate judges' authority to review district judges' decisions in a typical case would lead an objective observer to harbor doubts about a district judge's impartiality in a case in which an appellate judge's personal interests are at

stake; that is, the student will refuse to reprimand the teacher.

The trustee's argument glosses over the standard to be applied: recusal is mandated whenever an objective observer, *knowing all the circumstances*, would harbor doubts about a judge's impartiality. *See Liljeberg*, 486 U.S. at 861, 108 S.Ct. at 2203. Here, "all the circumstances" necessarily implies that the objective observer knows of the Constitutional guaranties of life tenure and irreducible salary that insulate district judges from the vicissitudes that accompany private sector employment. *See* U.S. Const. art. III, § 1. Thus although, as the trustee states, appellate judges typically review district judges' decisions, appellate judges have no authority to discharge district judges, reduce their pay, or in any other way threaten their livelihood. *See id.* In all functions other than adjudicatory, district judges are the operational equivalents of appellate judges. Fifth Circuit district and appellate judges serve together in the Judicial Conference and on various judicial councils, crafting operational policy and approving space and staffing requests of other district and appellate judges. District judges frequently sit side-by-side appellate judges on appellate panels.

Considering all these circumstances—the constitutional protections of the office of district judge, the institutional relationship between district and appellate judges, and the facts of this case—the court concludes that an objective observer, knowledgeable of the circumstances, would not harbor doubts about this puisne judge's impartiality. We refuse to abdicate. The court denies the trustee's motion.

---

6. The court considers it unlikely that the Second Circuit judge was appointed as a result of the status of the party defendant; the court notes that this appellate judge presided over twelve other cases during that same year.

7. It is noteworthy that eleven of the fourteen judges in regular active service on the appellate court recused themselves from hearing Judge Nixon's suggestion for rehearing *en banc*. Although these judges' recusal effectively foreclosed *en banc* review—a majority of the judges in

active service must vote to grant rehearing *en banc*—this seeming inequity was not favorably received by the panel. *See United States v. Nixon*, 827 F.2d 1019, 1020 (5th Cir.1987). The panel noted that this practice had previously survived judicial scrutiny, no panel member nor any judge in active service requested a vote, the decision comported with circuit precedents, and even the status of the defendant did not justify *en banc* attention. *Id.* at 1021.